May it please the court. My name is Steve Williams. I'm here to submit on behalf of the appellants. I would like to reserve two minutes of time for rebuttal. I want to start by being clear. The Filed Rate Doctrine is the law. I'm not asking, we're not asking this court to overrule it. We're asking this court to apply Congress's intent and to apply precedent to come to the conclusion that the motion to dismiss should not have been granted because there are numerous categories of commerce at issue that are not subject to regulation. And because the Surface Transportation Board has not exercised any of the type of regulation that this court in Brown held was necessary and that this court in Gallup suggested was necessary. And I want to begin by just reiterating the purpose, as Congress said, of the ICC Termination Act, which set up the regulatory and statutory scheme we're dealing with and which set up the Surface Transportation Board's authority, which was, quote, to encourage and promote service and price competition in the non-contiguous domestic trade. And what we are dealing with in this case are citizens, states, territories that are almost entirely dependent economically and for their well-being on transportation by container ships. And a case in which the pleadings in the motion to dismiss, as alleged, involve repeated impositions of surcharges collusively by agreement between the defendants that are not subject to any regulation by the Surface Transportation Board. What about the Surface Transportation Board's authority to exercise review by virtue of complaints that have been filed? Such complaints have been filed, have they not? Very few complaints have been filed, Your Honor. Should we decide this because not enough complaints have been filed? Would your position be different if there had been lots of complaints? Well, I think there's two answers to that. First of all, even if there were complaints as to the zone of reasonableness, we believe what Congress said was the Surface Transportation Board has no power over that. They can't do anything. What about the original rate? The original rate, they may be able to act upon, but... And wouldn't that feed into a review of a current rate that was within the zone of reasonableness but was based upon an initial rate that was not reasonable? It might, but I don't believe the statute can be read that way, because the statute would then require the preceding rate to have been reviewed, which it hadn't been. Why would that need to be reviewed? Because that then becomes a baseline rate, and you then have a process by which it becomes part of the review, in effect. So I don't know why it would need to have been through some other process before being, in effect, a baseline rate. Well, even if it were reviewed, you'd have to go back to determine if a rate which was already submitted with no review was reasonable when it was submitted, something that STB has not done and has no process and has no methodology to do. So, in effect, it's, one, not consistent with what the statute said, because the statute doesn't talk about reviewing that. The statute, by its terms, does not address going back to review those rates. It specifically talks about the zone of reasonableness and those increases not being subject to review. Well, isn't that a determination by Congress? What's wrong with that? The STB can still review a rate that is either above or below the presumptive range. It can review it above and below. And the reason it can't review within the range is because Congress has said that is reasonable. But our view of that, Your Honor, is Congress may view that as reasonable, but then we go back to what this Court has said in cost management and the Supreme Court has said in square D, which is Congress, in saying that that zone of reasonableness increase or decrease may be reasonable, was not intended to then say, and if the zone of reasonableness, if surcharges and rate increases in that zone are the result of illegal and collusive activity, it's exempt from being addressed by a court or by the regulator. But the regulator, I mean, I don't know why this is any different than the other cases where you have review by complaint, which the agency can do. Now, whether it's done it a lot, we basically have cases that say, if you will, regulation light, so to speak, and just a light hand is all that need to be passed over. Now, that may be, you may not be happy with that, but it seems up to now that that has met statutory and constitutional muster. When I evaluate those cases, I look primarily at electricity cases and this Court's application of that in the sphere of natural gas in the Gallo case. But what was fundamental to those analyses were, first, Congress explicitly stating that, for example, all wholesale electrical sales are within the plenary authority of the Federal Energy Regulatory Commission. That's not present in this statute. Second, the determination by FERC that it would impose market-based rates for wholesale electricity and that it made the affirmative decision based upon submissions by the electrical providers of their economic condition to determine that market-based rates would, in fact, be fair, just, and reasonable. It is called the filed rate doctrine, right? Yes, it is, Your Honor. It's not the regulated rate doctrine. We agree with that, Your Honor. And will you concede in this case the word filed, that they've satisfied filed? We wouldn't. We would concede there are some rates that are filed. There is other commerce for which no filing is required. There is other commerce for which no filing is required, but it may be done voluntarily if you comply with the statute by indicating that tariff is solely for informational purposes and is not binding. And there are other tariffs which, as we set forth in the complaint, are not valid tariffs. So we can't simply say we concede that tariffs were filed because for a substantial part of the trade of the issue, tariffs were not filed. For some of it, the tariffs were defective. Who should decide if a filed tariff is valid, the STB or this Court? This Court should. This Court has. This Court has determined that where a tariff is defective, it can't be used to enforce the rates set forth in that tariff. What's the defective tariff here? The base rate, is that the defective or the newly filed rates? The defective tariffs here, Your Honor, were for newly filed rates, and by reference to the, I apologize, the National Motor Freight Carriers Act, which Mattson, who filed referencing that NMFC, was not permitted to do so. An authority, which we've said in our brief, states if you do that, it is invalid, as if you had filed no tariff at all. So this argument applies only to that tariff? This argument would apply to any tariff that is defective. We've identified one specifically. In the case before us, it applies to the one tariff you've identified in your brief? Well, we allege that there are other tariffs. We did not list every single tariff. We did not feel in pleading. In order to establish on a motion to dismiss where the defendant is saying, the filed rate doctrine barred every claim you could possibly make in this case, that it was our burden at the motion to dismiss stage to do more than just demonstrate that there was, in fact, a factual disputed question. Are there some tariffs that are not defective? Is there an issue here? I believe, yes, Your Honor, there are some tariffs that were filed that were not defective. There are some that are. But our view of that circumstance is then putting aside the other issues, the exempt commerce, for which there's no regulation, the private contracts, the fact that these carriers can voluntarily choose whether or not they're even going to comply or file tariffs or adhere to tariffs. Putting those things aside, that on the motion to dismiss, where they're seeking to be completely dismissed from the case, no factual issue, everything subject to the filed rate, there are too many factually disputed matters here to permit that. Much as in Gallo, there were certainly conduct in Gallo, whether it was subject to a tariff that was filed or not. Because in Gallo, a lot of the claims were barred, even though no tariff was filed, because market-based rates were applied. And there's no requirement that the tariff be filed. Gallo teaches that, correct? There's no requirement that a tariff be filed, depending upon what Congress and the regulators say. So in Gallo, there was no requirement for regulated commerce that the tariff be filed because of FERC's affirmative conduct in, one, establishing a market-based rate system, two, taking steps to receive financial information from the regulated industries to determine whether or not, in fact, the market-based system would comply  and three, taking actions such as revoking Enron's market-based certificate when it found misconduct. In this case, we have an instance, and we've cited to our brief. I don't want to just repeat it, but in our reply brief at page 18, in the three cases the defendants point to to say, I'm sorry, the appellees point to to say that the STB has acted. In one of those, in Horizon, the STB said they had no jurisdiction. In the second, the Trailbroad case, it did not involve rates. And in the government of Guam case, the final case, which went on for 10 years, they never established any methodology that would work to remedy the claims made by the government of Guam, and the case was dismissed. That's it. But isn't the upshot of what you're saying that the court ought to step in because the regulator isn't very good?  I think our focus first is on the categories that Congress has said, in our view, are no longer within the STB's jurisdiction. And if it's not within the STB's jurisdiction, then file a tariff or not. Doesn't the statute say that those rates have to be reasonable? The statute does say that. However, the statute does not say, and I think of the Carnation case, and I think of the cases involving household goods. And in the cases involving household goods, there's still a regulator. Those rates are still to be reasonable, and you can still go to that regulator. But you also can go to court. The courts have held there's no bar to bringing those claims in court, and that's what this situation is for the exempted commerce and the private contracts in this case. Carnation had said that the fact you may go to a regulator doesn't mean, in that instance, you can't also go to a court. Provided you're not contradicting and you're not undermining the authority of what the regulator is supposed to do, pursuant to Congress's direction, then you can go to that forum. And we're not seeking to have this court or the district court do anything to undermine the jurisdiction of the Surface Transportation Board because Congress has taken away certain parts of commerce from the Surface Transportation Board's power to regulate. Wait. It sounds there that you're suggesting something in the nature of parallel jurisdiction, even though at bottom it's rate regulation, and you're suggesting, if I hear you correctly, some of this could be done by the STB and the remainder by the court. Is that your premise? Well, my premise, to be as precise as I can, is that for the fuel surcharges, which are the heart of what we allege was improper in this complaint and which were in the zone of reasonableness, for those charges the STB can act. Only the court can act. And the foul rate doctrine frequently is deemed harsh because, in some cases, it appears as if a remedy is taken away, but in most of those cases it's not. Rather, in those cases, what is happening is the remedy is with the regulator. In this case, our view is if there's no remedy, if you can't go to the STB because they would say we have no power to act, then the foul rate doctrine cannot bar citizens from coming into a federal court to seek relief. What is it you point to to show they have no power to act? The terms of the statute which define the zone of reasonableness and state that that is, in fact, for the purpose of the STB, reasonable. But there is a separate provision that says that the rates on the other goods or movements have to be reasonable. There is. But as we construe those two parts of the statute together, reading the whole statute, the STB can't act. I understand your position. Thank you. One question. Could your client have filed a complaint with the STB? We do not believe they could have filed a complaint with the STB for anything within the zone of reasonableness. And you concede the rates are within that zone? We believe almost all of the rates we're complaining of in our complaint are in the zone of reasonableness. Okay. Thank you. Thank you. Good morning. My name is Richard Rapoport. I represent Horizon, and I'm here with Mr. Saunders, who represents Mattson. I'm going to address the filed rate issues, and I'd like to take 12 minutes for that and reserve three minutes for Mr. Saunders to talk about the Twombly issues in this case. The district court in this case recognized that where Congress creates a regulatory body and gives it jurisdiction over rates, that the filed rate doctrine prevents courts from awarding damages, where doing so would require that the court test to substitute its judgment for the judgment of the regulator by determining what rate should have been charged. In this case, plaintiffs allege rates within the jurisdiction of the Surface Transportation Board were artificially inflated by a price-fixing conspiracy, and they brought a case in the district court seeking treble damages under the Sherman Act. Does the STB have any authority to deal with collusive rates? Yes, I believe they do. I mean, the STB has quite a bit of authority here. Have they ever acted on a complaint alleging that the rates, even though within the zone of reasonableness, are the result of collusion? I don't believe they have so acted, although in the government of Guam case there was a complaint complaining generally about all of the rates in that trade lane. If, in fact, the rates complained of were within the zone, would the board have jurisdiction even if those rates were the result of collusion? Yes, I think they would because there's an overall rate reasonableness requirement, and you have to look at the base rate, which the STB can look at, and determine whether that rate is reasonable and whether the XOR rate is also reasonable. So there's an overall requirement of reasonableness, but there is the safe harbor that's correct that Congress has created that prevents the rates within the safe harbor from being disturbed. One of the things that distinguishes this from the FERC cases, and we're in this court well versed in FERCology, I guess, if you will, is that FERC is very active, almost a micromanager, if you will, on rate issues, and that is really in part the genesis of the Gallo case. Here you have virtually no oversight, and is that not a distinction that really undermines your reliance on Gallo? No, I don't believe so because there is in the statute in 13701 as well as 13702, sets forth the authority that the STB has to investigate and to supervise rates. I mean, the STB requires, first of all, that rates in OCEAN, in the non-contiguous domestic trade, be filed, except for certain categories that are excused from a tariff filing. It has the power to investigate on its own volition. It has power to subpoena witnesses. It has the power to entertain complaints by aggrieved shippers. It has the power to seek documents and can do an entire investigation. So it can be active, and it does have the requirement is that rates be reasonable. So all of its powers go to the ability to determine whether a rate is reasonable or unreasonable. So the question is whether they have been as publicly active as perhaps FERC has been, something I can't answer. We don't know how much the STB is actually looking at rates that are filed because all the rates have to be filed except for these exceptions, and could be monitoring it in such a way but not publicly bringing proceedings. Isn't it correct that once the board determines that a complained-of rate is within the zone of reasonableness, that their inquiry stops? They have no authority to go behind what led to those rates? Well, I believe that they could look at the overall rate reasonableness. For example, if the base rate is unreasonable and the rate and the XOR percentage. Assume that everything is satisfied, and the end result of that inquiry is that the rate established is within the zone of reasonableness. Doesn't their authority end at that point? Yes, they would not. And they would have no authority to investigate whether that rate was the result of collusion, correct? I believe they could still investigate, but if the rates are within the XOR, then they would be presumptively reasonable. I hate to beat a dead horse. Are you telling us that even if the rates within the zone of reasonableness were the result of collusion, that's okay? Yes, because that jurisdiction has been given to the Surface Transportation Board to decide. And under the filed rate doctrine. And they would have no authority in that instance, the hypothetical instance I've given you, to inquire into or make any determination about a collusive rate? That's correct. Doesn't that take it outside of Gallo? No, I don't believe so. Because, again, if it's within the XOR and it's presumed reasonable, that is within their jurisdiction. They are given rate reasonable in this jurisdiction. That's the requirement of the statute. Okay. I understand your position. Okay. I did want to direct the court to a few other provisions here that the plaintiffs are contending that Judge Zilli did not correctly decide. First of all, with regard to rates that are within, that are exempted by private contract, those rates are not subject to this proceeding because none of the plaintiffs allege in this case that they filed, they were parties to any contract under the statute that exempted those rates from the jurisdiction of the STB. And for that reason, none of those plaintiffs can claim that their private contracts, which waive their rights under the Surface Transportation Board jurisdiction, is outside of that jurisdiction. With regard to commodities that are exempt from tariff filing, it's clear that they are still subject to rate reasonableness and for that reason are not subject to the antitrust laws. The opponent's lawyer argues that if you read the statute correctly, even though those commodities may be subject to a reasonable rate, the STB has no authority to police that. Do you agree with that? I'm sure you don't, but explain to me why you don't. Because they still can investigate the reasonableness of the rate and can determine if the rate is unreasonable that would be within their jurisdiction to decide. All the commodities excused from tariff filing provide is that they don't have to file tariffs. So your view of the statute is that the STB has the same authority with regard to the commodities for which a filing isn't required as it does for those for which a filing is required? Both. Except that the presumption regarding the percentages doesn't apply to the commodities for which no filing is required. There it's just straightforward, it has to be reasonable? It also has to be, well, I think all of the commodities subject to STB jurisdiction would be within the ZOR. So you would have both. For example, bulk cargo, the rate has to be reasonable, but it doesn't have to be filed. That's correct. And the reasonableness of that rate isn't tested by the range of percentages set forth for those cargos for which a rate has to be filed? No, I think both of those would be, that's correct. All right. With regard to the issue of the void tariff, I did want to comment on that. Because the tariff is void, it does not take it outside of the reasonable jurisdiction of the STB and allow the court a role in deciding what the rate would be. The court still has, I mean, excuse me, the STB still has a role in deciding what the reasonable rate is. All the void tariff results in is that the rate in that void tariff can't be recovered. But it doesn't mean that it's outside the jurisdiction of the STB or the STB cannot act. So for that reason alone, the Matson void tariff, even if it is void, would not subject those rates to the Sherman Act. Now, with respect to the proposition that these rates could be the result of collusion, wasn't there some suggestion in Gallo that they were also the subject of collusion? I mean, isn't the whole point here that the court shouldn't go behind the authority of the board? Well, that's right. I mean, it sounds like a bad thing for rates to be collusive. And maybe, I mean, I suppose we would all agree to that. But I think Congress has decided that another authority has complete control. That's right. I mean, that is the entire theory behind the Filed Rate Doctrine, that rates within the regulated by a regulatory body are not subject to the antitrust laws, not to the antitrust laws, but to a damage claim. So all we're saying here is under the Filed Rate Doctrine, the Filed Rate Doctrine is not an immunity doctrine. It is a doctrine that basically says damage claims are not allowed. It does not prevent government investigation. It doesn't prevent injunctive relief if properly pled. All it prevents is a lawsuit for damages, trouble damages. Do you want to save the remaining time for your colleague? Yes, I'd like to. Thank you very much. Thank you. May it please the Court, I'm Joel Sanders, and I represent Matson Navigation in Alexander and Baldwin. And before I take just a couple minutes to address Twombly, I do want to mention one thing in response to a question that Judge Hawkins had. While it is true that if a rate, a base rate is reasonable and an increase is within the ZOR, the shipper may not have a remedy at the STB. It is not okay. Collusion is not okay. And the colluders are still subject to prosecution under federal law and state law. So it's not that there's a free zone to collude here. I just want to be clear about that. That's not our position. I'm sure it's everyone's. In that instance, they would be subject to criminal prosecution? Yes. Yes, exactly. Would they be subject to state antitrust enforcement, non-criminal antitrust enforcement? They could be subject to state non-criminal antitrust enforcement, but not one that requires the court to look at or recalculate a rate. But they can be subject to fines, injunctions, and other sorts of state civil antitrust enforcement. But we do think the judgment of the district court should be affirmed based on the filed rate doctrine. It can also be affirmed alternatively, as Judge Zilley found on the first motion to dismiss, because the allegations of the complaint do not satisfy the pleading standards set forth by the Supreme Court in Twombly. In defending the sufficiency of their allegations, the appellant's starting point is the nationwide grand jury investigation conducted by the Department of Justice. It's an investigation of all of the domestic ocean shipping lanes. In fact, these class actions were filed very shortly after the announcement of that investigation, as were class actions in all the other trade lanes. We think that the existence of that investigation is not relevant. The appellants contend otherwise. But if they're right that it is relevant, then it must also be relevant that in the more than three years since the announcement of that investigation, there have been no charges at all with respect to the Hawaii and Guam trade. The only charges have been out of Puerto Rico. Those go back now almost three years, and none of them have implicated any other trade lane other than Puerto Rico. The allegations that do matter are the ones about the Hawaii and Guam trade lanes. And those allegations are consistent with what one would expect in the type of market that the plaintiffs have alleged. They allege a market where there are only two competitors whose services are fungible, who are subject to government regulation and subject to tariff filing, and are subject to the Jones Act, which they say creates a barrier to competition and raises the costs of the participants. That is exactly the type of market that the Supreme Court has told us in Twombly and before that in Brook Group, where you would expect to see price matching, follow the leader behavior, conscious parallelism. At least someone would claim it's a natural duopoly here. Yes. I think that's what the plaintiffs have alleged. And you would expect in that situation for the competitors to be watching each other and to do exactly what the other has done. As a result of independent decision-making and not collusion. And as I see that my time has expired, so unless there are questions, I will turn the podium over. Thank you. Thank you. Thank you. I have a little less than a minute. I'll try not to speak too quickly. I want to respond to a question or a comment by Judge Sedgwick, which was in Gallo, there were allegations of collusion and the file-to-rate doctrine was applied to some of the conduct. That's not arguable. That's what Keogh says. That's what the file-to-rate doctrine has always been. And Keogh, the plaintiff, said they colluded, then they filed this rate, you can't sue for antitrust damages. Because in those cases, tariff was filed, was approved, and a regulator acted. Here, first, for those things not in the STB's jurisdiction, for those things Congress has said they can't act on, they can't be within the file-to-rate doctrine just like the falsely reported rates that were done through collusion in Gallo couldn't be. And finally, yeah, there were guilty pleas in Puerto Rico. The STB's done nothing ever. This regulator has not done anything despite the fact that there were pleas of guilty to violating the law and the antitrust law. So this Court has said in the electricity cases where the regulator doesn't act, doesn't do anything, then there's no basis to apply the file-to-rate doctrine, and that's the case here. Thank you very much. Thank you. Thank all counsel for your argument this morning. Accutron v. Mattson Navigation is submitted. We'll next hear argument in Montana Sulphur v.
judges: Sedwick, Hawkins, McKeown